# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GLENN MCCLOUD, | : | CIVIL NO. 3:14-CV-0819 |
| Petitioner | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| WARDEN J.E. THOMAS, | : | |
| Respondent | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241 filed by petitioner, Glenn McCloud ("petitioner"), an inmate incarcerated at the United States Penitentiary at Allenwood, White Deer, Pennsylvania. He contends that his due process rights were violated during the course of disciplinary proceedings. The petition is ripe for disposition and, for the reasons that follow, will be denied.

## I.    Background

Petitioner challenges two separate disciplinary proceedings stemming from Incident Report 2360471 and Incident Report 2397950.

### A.    Incident Report 2360471

On October 10, 2012, while incarcerated at the United States Penitentiary in Atlanta, Georgia, petitioner was made aware that he was being charged with Prohibited Act Code 101(a), Assault (A), and Prohibited Act Code 104, Possession of a weapon. The incident report described the incident as follows:

> After completion of an investigation it was revealed that you attempted to assault inmate [ ] with a sharp metal weapon (Shank). Specifically, you were observed on video surveillance chasing inmate [ ] with a shank. You then tackled inmate

> [ ] near the inmate telephone.  Upon taking inmate [ ] to the ground you struck your head on the metal window frame causing a large laceration to the right side of your head.  The unit officer called for assistance and responding staff separated and placed both inmates in restraints without further injury.

(Doc. 7-1, p. 8.)

During the Unit Discipline Committee ("UDC") review, he stated "[i]t wasn't an assault it was a fight, I had a knife attached/tied to my wrist for protection & slipped, fell and struck my head. (Id. at 9).  The UDC referred the matter to the Disciplinary Hearing Officer ("DHO") due to the severity of the offense and recommended 60 days disciplinary segregation, 25 days loss of good conduct time, and 60 days without phone, visits, commissary and email privileges.  (Id.)  After being advised of the rights associated with the process, petitioner indicated he understood his rights by affixing his signature to the Inmate Rights at Discipline Hearing from.  (Id. at 10, 17).  He chose not to have a staff member present and declined the offer to call witnesses.  (Id. at 18).

The hearing commenced on October 18, 2012. (Doc. 7-1, p. 19).  He waived his right to staff representation, did not request witnesses and denied the charges against him.  (Id.) The DHO summarized his statement as follows: "Denies the actions, of assault.  He admitted he had the weapon but this whole incident was a fight gone bad.  He and inmate [ ] were having an argument about owed debts and [ ] wasn't going to pay up.  They were squared off then [ ] started to run during the fight."  (Id.)  Documentary evidence relied upon included the incident report and investigation, memorandums, health services medical assessment report (Assault/Fight), photos and injuries of inmates involved.  (Id. at 20).

The DHO found based on the evidence that petitioner committed the Prohibited Act of

2

Code 101 offense of serious assault to another. (Doc. 7-1, p. 22.) In arriving at this conclusion, he stated the following:

> This finding is based on the written report that states staff had the eyewitness account of viewing you on surveillance footage chasing down inmate [ ]. You were seen with a weapon running after [ ] who is [sic] fleeing. You reached him and tackled him at the inmate phone bank. The struggle caused injuries to both yourself and inmate [ ]. You were positively identified as being one of the inmates involved. Your defense was: Denies the actions, of assault. He admitted he had the weapon but this whole incident was a fight gone bad. He and inmate [ ] were having an argument about owed debts and [ ] wasn't going to pay up. They were squared off then [ ] started to run during the fight. The DHO considered the spplemental [sic] memorandum provided by Health Services staff, and photographs of both inmates [sic] injuries, and that you had no defense other than not remembering the incident. Based on Section 11, of the incident report, the supplemental memorandum provided by Health Services of injuries of each inmate consistent with a fight, your own admission that this was some kind of altercation, the DHO does find that you did commit the prohibited act of Code 101 224A.

(Id. at 20-21).

In sanctioning him with a total on both offenses of disallowance of 54 days of good conduct time, 60 days disciplinary segregation, and 3 months loss of email and commissary privileges, the DHO reasoned as follows: "The action behavior of any inmate to assault or fight in a correctional setting poses a serious threat to health, safety and welfare of all involved. Your Actions/Behavior could have escalated and caused serious injury to others as [sic]. DS was imposed as punishment, DIS GCT meets your PLRA sentence and puts you in notice that if you violate the rules and regulations you will prolong your incarceration, although LP Comm is not directly related to this act the DHO finds that you actions/behavior jeopardizes the security and orderly running of the institution and greater sanctions were needed to demonstrate the seriousness of the act." (Id. at 21).

After exhausting all available administrative avenues of review, petitioner filed the instant petition arguing that his due process rights were violated because the DHO did not review video surveillance, there was insufficient evidence of guilt, he was not present at the initial hearing or rehearing and could not present any witnesses or have a staff representative. (Doc. 1, pp. 9-11).

### B. Incident Report 2397950

On January 16, 2013, while incarcerated at the United States Penitentiary in Atlanta, Georgia, petitioner was served with Incident Report 2397950 charging him with possession of a hazardous tool (cell phone), Prohibited Act Code 108. (Doc. 7-1, p. 22). The Incident Report described the incident as follows:

> On the above date and time, while conducting routine shakedowns I found a black and silver cell phone enclosed in a brown sack, hidden in the bottom of an altered deodorant bottle. When questioned, Inmate McCloud admitted ownership of the phone. Also altered batteries were found that were being used as the charge for the phone. The cell phone and homemade charger was [sic] confiscated and submitted to SIS.

(Id.)

During the UDC review, he declined the offer to provide a statement. (Doc. 7-1, p. 23). Staff advised him of his rights associated with the process. (Id. at 24). The UDC referred the matter to the DHO due to the severity of the offense and recommended 60 days disciplinary segregation, 40 days loss of good conduct time, and loss of all privileges including phone, commissary, visits and email for 365 days. (Id.) Petitioner indicated he understood his rights associated with the disciplinary hearing process by affixing his signature to the Inmate Rights at Discipline Hearing form. (Id. at 25-26). He chose not to

4

have a staff member present and declined the offer to call witnesses. (Id. at 26).

The hearing commenced on February 1, 2013. (Doc. 7-1, p. 28). Petitioner waived his right to staff representation, did not request witnesses and denied the charges against him. (Id. at 28, 30). In finding that he committed the Prohibited Act of Code 108 offense of possession of a hazardous tool (cell phone), the DHO stated the following in his February 5, 2013 report:

> This decision is based on the statement of the reporting officer who detailed and outlined an incident involving you in which staff had the eyewitness account of during a search of you and your assigned cell in SHU, a cell phone was found. Specifically, the cell phone was a black and silver phone enclosed and concealed in a brown sack hidden in the bottom of an [a]ltered deodorant bottle. In addition, altered batteries were found. The batteries were fashioned in a way to be used to charge the cell phone. The contraband was confiscated.
>
> The following additional items were also considered for the final decision at the DHO hearing:
>
> 1.   Photograph of the item and chain of evidence of the item.
> 2.   Your admission of the offense at the DHO hearing.
>
> The DHO found the greater weight of the evidence in the account of the incident and the facts the DHO listed herein Section 5. Accordingly it is the finding of the DHO that you committed the prohibited act as charged.

(Id. at 28- 29).

In sanctioning him with a disallowance of 14 days of good conduct time, 35 days disciplinary segregation, and 6 months loss of visiting privileges and loss of phone privileges which in disciplinary segregation, the DHO reasoned as follows:

> The action/behavior on the part of any inmate to violate the rules, regulations and conditions of the Bureau of Prisons behavior and conduct is a threat to the health, safety and welfare of not only the inmate involved, but all other inmates and staff alike. This misconduct is often the reason for inmates incurring debts and causing

> future misconduct and bad behavior. This behavior cannot be tolerated.
>
> Disciplinary segregation was imposed due to the severity of your offense. It is apparent that your adjustment in population has been poor up to this point. Hopefully, this sanction will influence your future decisions to commit offenses such as these.
>
> Good conduct time was disallowed because of the severity of the offense and to deter this activity in the future. It is apparent your conduct reflects poor institution adjustment and does not warrant the same consideration for good conduct time as those inmates following the rules and regulations of the Bureau of Prisons.
>
> Loss of privileges was imposed due to your poor institution adjustment and behavior. Privileges are meant for those inmates who follow rules and regulations and do not present a management problem for staff or pose a threat to the security of the institution, self or others.
>
> These sanctions have been imposed to correct the present inappropriate behavior and deter future behavior of this type. The DHO hopes that the sanctions will motivate you towards more self discipline in the future.

(Id.)

Petitioner filed an appeal. The appeal resulted in a remand to the DHO for a rehearing based on the following:

> After review, it was determined that a rehearing will be necessary in this case. Specifically, the Code 108 violation cannot be supported in its present form. Section 11 of the incident report and Section V of the DHO report failed to indicate where the cellular telephone was found. Additionally, another inmate was charged with this same cellular telephone. Without this information, it cannot be determined the charged inmate was in possession of the cellular telephone. Absent additional information, the incident report should be expunged. If additional information is available, the incident report should be rewritten and processed as new. A rehearing should be conducted and the inmate should be informed of the finding and the rationale for the finding. Section V of the DHO report should also provide detailed information regarding the finding for the prohibited act.

(Doc. 6, pp. 6-7; Doc. 1, p. 12) ). The rehearing was conducted on March 1, 2013, and, at

that time, the DHO found petitioner committed the prohibited act as follows:

> The decision is based on the statement of the reporting officer who detailed and outlined an incident involving you in which staff had the eyewitness account of during a search of you and your assigned cell in SHU, a cell phone was found. Specifically, the cell phone was a black and silver phone enclosed in a brown sack hidden in the bottom of an altered plastic bottle (which appeared to be a deodorant or lotion container). In addition, altered batteries were found. The batteries were fashioned in a way to be used to charge the cell phone. The contraband was confiscated. Staff further reported you accepted responsibility and claimed ownership of the phone at the time of the incident. Specifically, you are assigned to the handicap accessible cell which is larger than other SHU cells and this phone was found in the above described container at the foot of your assigned bed in the altered container.

(Doc. 7-1, p. 31). Petitioner appeared at the hearing and, at that time, was shown a photograph of the cell phone and batteries, "as this was part of [his] appeal, that [he] had never been shown the photo of the evidence." (Id.) The same sanctions were imposed except that the loss of visitation privileges was reduced from 6 months to 5 months. (Id.) Petitioner received a copy of the DHO's report on March 8, 2013. His appeal of the rehearing was unsuccessful. (Doc. 1, p. 22; Doc. 7-1, p. 35).

After exhausting all available administrative processes, petitioner filed the instant petition arguing that his due process rights were violated because the DHO relied on evidence that was not credible. (Doc. 1, pp. 7).

**II.  Discussion**

Petitioner's claim that his due process rights were violated in the context of the disciplinary hearing process, and that these violations resulted in a loss of good conduct time, is properly the subject of this habeas petition because it directly impacts the duration of petitioner's confinement. The Due Process Clause of the Fifth Amendment of the

7

Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  Federal inmates possess a liberty interest in good conduct time.  See Wolff v. McDonnell, 418 U.S. 539, 555-57 (1974); Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

The Federal Bureau of Prisons' ("BOP") disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541 through 541.8 (2011).  These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules.  The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.5.  Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator.  28 C.F.R. § 541.5(b).

Following the investigation, the matter is then referred to the UDC for a hearing pursuant to 28 C.F.R. § 541.7.  If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions.  (Id.)  If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a DHO for a hearing.  (Id.)  Because petitioner was charged with offenses in the greatest severity category, both matters were referred for a disciplinary hearing.

Greatest category offenses carry a possible sanction of, *inter alia*, loss of good conduct time credits.  28 C.F.R. § 541.3.  When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the inmate receive (1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing, (2)

an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. See Wolff v. McDonnell, 418 U.S. 539, 564–66 (1974).

### A. Incident Report 2360471

Petitioner takes issue with the manner in which the DHO concluded his hearing. Specifically, he states that the DHO "agreed to post-pone the hearing in order to have video surveillance evidence and staff representation for [his] defense" and that "[t]he DHO did conclude the hearing without my presence, consent, review of video surveillance, or staff representation." (Doc. 1, p. 9, ¶¶ 2-3).

It is first noted that there is no evidence in the record that the initial hearing was postponed or that petitioner was not present at the conclusion of his October 18, 2012 hearing. Further, as petitioner received the Incident Report on October 10, 2012, approximately eight days before the hearing; waived the opportunity for staff representation and to call witnesses; and was given a written statement by the DHO outlining the evidence relied upon and reasons for the disciplinary action, there is no violation of petitioner's due process rights.

More specifically, with respect to staff representation, a prisoner does not have a general constitutional right to have a staff representative appear on his behalf in a disciplinary proceeding. See Hudson v. Hedgepeth, 92 F.3d 748, 751 (8th Cir. 1996). Instead, due process requires that inmates be provided with the aid of a staff representative

9

only where the inmate is illiterate or "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case."  See Wolff, 418 U.S. at 570; Duarte v. Turner, 46 F.3d 1199 (7th Cir. 1995) (unpublished opinion) (rejecting prisoner's habeas claim that his staff representative was ineffective for failing to discover evidence because due process under Wolff only requires the aid of a staff member where the inmate is illiterate or the issues are complex).  The record is devoid of any evidence that petitioner requested staff representation.  In fact, the evidence is to the contrary; it demonstrates that he declined the offer of staff representation on two separate occasions.  Had he been denied a staff representative, as he contends, he would have fared no better.  There is no indication that he is illiterate or that the complexity of the charges made it unlikely that he was able to collect and present the necessary evidence.  Therefore, the petition will be denied on this ground.

He also contests the sufficiency of the evidence.  Specifically, he takes issue with the fact that the DHO did not consider the affidavit of Inmate Vincent Craft, who executed a sworn affidavit that petitioner did not assault or attempt to assault him.  Where the due process requirements of Wolff are met, as is the case here, the decision of the hearing examiner will be upheld if there is "some evidence" to support the decision. Superintendent v. Hill, 472 U.S. 445, 455 (1985); see also Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying Hill standard to federal prisoner due process challenges to prison disciplinary proceedings).  The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of

10

witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455. Under Hill, judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. Id. at 457; see also 28 C.F.R. § 541.17(f) (requiring that the DHO's decision be based upon at least some facts and, if there was conflicting evidence, to be based on the greater weight of the evidence).

The court finds that evidence relied upon by the DHO, the staffs' eyewitness accounts of viewing petitioner on surveillance footage chasing the other inmate, petitioner's statement wherein he admitted to possession of the weapon and fighting with the other inmate, the incident report and investigation, memorandums, health services medical assessment report (Assault/Fight), and the photos and injuries of inmates involved, constituted "some evidence" that petitioner committed the prohibited acts. The purported victim's affidavit that he was not assaulted by petitioner, in the face of video surveillance and other evidence, does not alter the conclusion that the DHO's findings were based on some evidence. The petition will be denied with respect to petitioner's claim that there was insufficient evidence to support the DHO's decision with regard to Incident Report 2360471.

### B.      Incident Report 2397950

Petitioner challenges the sufficiency of the evidence relied upon by the DHO in finding him guilty of the charges in Incident Report 2397950. The court concludes that evidence relied upon by the DHO at the March 1, 2013 rehearing, eyewitness account of staff

during the search, petitioner's acceptance of responsibility and claim of ownership of the phone, the failure of petitioner to make a statement at the hearing or present a defense, and the photograph and chain of evidence of the item, is sufficient to meet the "some evidence" test. (Doc. 7-1, p. 31). The petition will therefore be denied with respect to Incident Report 2397950.

## III.   Conclusion

Based on the foregoing, the petition for writ of habeas corpus will be denied. An appropriate Order follows.

                                            **BY THE COURT:**

                                            **s/James M. Munley**
                                            **JUDGE JAMES M. MUNLEY**
                                            **United States District Court**

Dated:  June 22, 2015